# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICKEY L. DOOLEY, ) | |
| ) | |
| Petitioner/Defendant, ) | |
| ) | CIVIL NO. 10-165-GPM |
| vs. ) | |
| ) | CRIMINAL NO. 08-30010-GPM |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent/Plaintiff. ) | |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Mickey L. Dooley filed a motion pursuant to 28 U.S.C § 2255 to vacate, set aside, or correct sentence by a person in federal custody (Doc. 1). He filed similar motions seeking the same relief (Docs. 2, 12, 14). The Government's response and Mr. Dooley's reply followed (Docs. 5, 8). Mr. Dooley also filed three motions to compel the production of physical evidence relating to his allegations (Docs. 3, 10, 11) and requested that the Court unseal the trial testimony of Assistant United States Attorney Deirdre Durborow (Docs. 9, 13). Now he seeks summary judgment (Docs. 15, 16) and release on bond pending the outcome of the Court's decision (Doc. 18). The issues raised in Mr. Dooley's motions for summary judgment and for release pending the Court's ruling track those raised by his other motions and will be considered together. All of his claims are denied without a hearing for the reasons that follow.

### FACTUAL BACKGROUND

On January 25, 2008, an indictment was returned against Mr. Dooley charging him with removing items and money from the evidence locker of the Alton Police Department (APD), where he was employed for three years from May 2004 to April 2007 as the APD evidence

custodian.  On May 22, 2008, a superseding indictment was returned charging Mr. Dooley with eight counts:  making false statements during an investigation conducted by the Federal Bureau of Investigation (FBI) (Counts 1 and 2); wire fraud (Count 3); attempting to conceal an object with intent to impair its availability for use in an official proceeding (Count 4); disposal of money stolen from two banks (Counts 5 and 6); misapplication of property under the control of a local government (Count 7); and failure to file a federal income tax return (Count 8).  Attorney Gordon Freese was appointed to represent Mr. Dooley and remained his attorney during all times relevant to the pending motions.  On July 20, 2008, Attorney Freese filed a motion to dismiss the superseding indictment on the basis that each count of the indictment was deficient (Doc. 5-6).  The Court denied the motion to dismiss after hearing argument on August 4, 2008.  A jury found Mr. Dooley guilty on all counts, and the Court imposed an above guidelines sentence of 120 months imprisonment.  On appeal, the United States Court of Appeals for the Seventh Circuit vacated the conviction on Count 3 and remanded the case for resentencing.  After reviewing the sentencing factors in 18 U.S.C. § 3553, the Court determined that, despite the acquittal on Count 3, a guidelines sentence was insufficient to satisfy the nature and seriousness of Mr. Dooley's offenses and imposed the same above guidelines sentence of 120 months imprisonment.

## DISCUSSION

**Evidentiary Hearing Standard**

A 28 U.S.C. § 2255 motion does not mandate an evidentiary hearing.  *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996).  "[A] district court *must* grant an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle [him] to relief."  *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (emphasis in original) (internal quotation marks omitted).  However, if "the motion and the files and records of the case conclusively show that

the prisoner is entitled to no relief" then a hearing is not required. *Id.* Allegations that are "vague, conclusory, or palpably incredible rather than detailed and specific" do not warrant a hearing. *Bruce v. United States*, 256 F.3d 592, 597 (7th 2001) (internal quotation omitted). Likewise, "mere speculation" does not warrant an evidentiary hearing, as the petitioner must file a sworn affidavit providing specific details that show he has actual proof of the allegations he is making. *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002); *cf. Daniels v. United States*, 54 F.3d 290, 293 (7th Cir. 1995) (granting evidentiary hearing on § 2255 petition based on conflicting evidence contained in sworn affidavits of petitioner and his former attorney). For evidentiary hearing consideration, the Seventh Circuit requires that a motion made under § 2255 "include an affidavit setting forth the specific basis for relief." *Kafo*, 467 F.3d at 1067. An affidavit accompanying the petition is a threshold requirement; "its absence precludes the necessity of a hearing." *Id.* The petition must be accompanied by a specific and detailed affidavit showing that the petitioner has actual proof of the allegations; "[m]ere unsupported allegations cannot sustain a petitioner's request for a hearing." *Prewitt* 83 F.3d at 819, *quoting Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989).

Mr. Dooley's § 2255 motion does not specifically request an evidentiary hearing and is not supported by an affidavit. A careful review of the motion, file, and record discloses that an evidentiary hearing is not required; the Court will resolve Mr. Dooley's motions without a hearing.

<u>Mr. Dooley's Request for Appointment of Counsel</u>

A § 2255 proceeding is an independent civil suit for which there is no constitutional right to counsel. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *see also Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007) (en banc); *Powell v. Davis*, 415 F.3d 722, 727 (7th Cir. 2005);

*Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998); *Oliver v. United States*, 961 F.2d 1339 (7th Cir. 1992). Rule 8(c) of the rules governing § 2255 proceedings, however, allows for appointment of counsel for indigent prisoners if an evidentiary hearing is required. *See* FED. R. GOV. § 2255 Cases 8(c). When considering a request for appointment of counsel, the Court shall make the following inquiries: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654-55. Mr. Dooley has made no indication that he has attempted to obtain counsel for himself. His claims are presented in a clear, articulate manner, the issues raised are not complex, and there is no need for an evidentiary hearing. Therefore, the request for appointment of counsel is denied.

**Collateral Review Under 28 U.S.C. § 2255**

The Court is required to vacate, set aside, or correct the sentence of a prisoner if it finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "Habeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Kafo*, 467 F.3d at 1068. There are "significant procedural hurdles" to consideration of a petitioner's habeas claim under § 2255. *Bousley v. United States*, 523 U.S. 614, 615 (1998). Collateral relief is appropriate only when the error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. Unites States*, 113 F.3d 704, 705 (7th Cir. 1997). Habeas relief under § 2255 is not a substitute for direct appeal. *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000). Thus, "[c]laims

not raised on direct appeal are barred from collateral review unless upon review, [the Court is] convinced that a failure to consider the issue would amount to a fundamental miscarriage of justice." *Id.* at 433. Specifically, a § 2255 motion "can *not* raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (emphasis in original), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994).

Despite these proscriptions on the availability of § 2255 collateral review, procedural default cannot serve as the reason for dismissing an ineffective assistance of counsel claim brought under § 2255. *Fuller v. United States*, 398 F.3d 644, 650 (7th Cir. 2005). Ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). A § 2255 motion is a more appropriate venue than direct appeal for raising ineffective assistance of counsel claims, as the opportunity to adequately "develop the factual predicate for the claim" arises independent of the trial record. *Id.*

**Ineffective Assistance of Counsel**

The Court evaluates an ineffective assistance of counsel claim under the well known two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007), *citing Strickland v. Washington*, 466 U.S. 668, 694 (1984). There is a heavy burden of proof on a petitioner asserting an ineffective assistance of counsel claim. *Harris v. Reed*, 894 F.2d 871, 874 (7th Cir. 1990). "The benchmark for judging any claim to ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Under *Strickland*, the petitioner must prove (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell*, 497 F.3d at 761, *citing Strickland*, 466 U.S. at 690, 694. If the Court finds *either* the performance *or* the prejudice component of the ineffective assistance claim to be insufficient under the *Strickland* test, then it need not consider the sufficiency of the other component. *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990). "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

The Court's review of attorney performance is "'highly deferential,' with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002), *quoting Strickland*, 466 U.S. at 689. Counsel is "strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment." *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004). The Court presumes that counsel made reasonable strategic choices unless the petitioner produces evidence rebutting that presumption. *Id.* Hence, it is "not easy for a petitioner to show that his counsel's performance was objectively ineffective, as ... '[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.'" *Hartjes v. Endicott*, 456 F.3d 786, 790 (7th Cir. 2006), *quoting Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). In order to

establish that counsel's performance was deficient, the defendant must show errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Hartjes*, 456 F.3d at 790.

Proving that deficient performance of counsel actually prejudiced the defense requires showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Benefiel v. Davis*, 357 F.3d 655, 661 (7th Cir. 2004), *citing Strickland*, 466 U.S. at 694; *see also Williams v. Taylor*, 529 U.S. 362, 363 (2000). This test is also "highly deferential to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005). The petitioner must demonstrate that counsel's error actually had an adverse effect. *Strickland*, 466 U.S. at 693. However, "[n]ot every adverse consequence of counsel's choices is 'prejudice' for constitutional purposes." *United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993). Counsel's conduct must be shown to have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cooper*, 378 F.3d at 642, *citing Strickland*, 466 U.S. at 686. The petitioner must prove that counsel's ineffectiveness deprived him of a substantive or procedural right to which he is entitled by law. *Williams*, 529 U.S. at 363. The petitioner must introduce objective evidence in support of his § 2255 motion; self-serving testimony is not sufficient to prove the prejudice component of the *Strickland* test. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996).

<u>The Attorney-Client Relationship</u>

Mr. Dooley claims that Attorney Freese was ineffective due to a breakdown in attorney-client communication. He faults Attorney Freese for ignoring several defense strategies, which he does not name, and for refusing to discuss the merits of his input, which he does not explain.

He also claims that Attorney Freese failed to adequately investigate his case, interview unnamed witnesses, and request unspecified physical evidence.

In evaluating a client's case, an attorney has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary. *Strickland*, 466 U.S. at 691. Relying on three Supreme Court rulings, Mr. Dooley argues that consulting one's client is a necessary step in making a reasonable investigation and that Attorney Freese failed to consult him by ignoring his suggestions. (*See* Doc. 1-1, p. 6, *citing Moran v. Burbine*, 475 U.S. 412, 431 (1986) (defendant not deprived of right to counsel through actions of police), *Strickland*, 466 U.S. at 691, *and Geder v. United States*, 425 U.S. 80, 88-89 (1972) (judge's order preventing the defendant from consulting his counsel during 17 hour overnight recess between direct and cross examination deprived defendant of his right to counsel). Counsel's duty to consult with his client is a basic component of adequate representation. *Strickland*, 466 U.S. at 688. None of these cases supports Mr. Dooley's position that an attorney is ineffective by failing to follow through with a suggestion made to him by a defendant.

Mr. Dooley's dissatisfaction with Attorney Freese's response to his suggestions does not mean that he was unable to consult with his attorney. By his own admission, Mr. Dooley was able to suggest legal theories, possible defense witnesses, and the location of supposedly helpful physical evidence. Although Mr. Dooley is familiar with the particulars of his own case, he lacks legal training and his proposed stratagems may be worthless in the crucible of trial. This is why he has the right to an attorney. "Many of the rights of an accused, including constitutional rights, are such that only trained experts can comprehend their full significance, and an explanation to any but the most sophisticated client would be futile." *Gonzalez v. United States*, 553 U.S. 242, 249 (2008).

Mr. Dooley's claim that Attorney Freese failed to reasonably investigate his case is undercut by Attorney Freese's actions before and during trial. In his affidavit, Attorney Freese avers that he contacted locksmiths in an effort to obtain expert testimony, interviewed potential defense and prosecution witnesses, and enlisted the assistance of an investigator who also contacted witnesses and conducted additional investigation (Doc. 5-1, ¶ 5). At trial, Attorney Freese presented the testimony of five witnesses beneficial to Mr. Dooley's defense. Mr. Dooley's allegations are insufficient to establish that Attorney Freese failed to reasonably investigate his case.

Mr. Dooley argues that the alleged breakdown in communication required Attorney Freese to withdraw from his representation of Mr. Dooley. In order to prevail on this claim, Mr. Dooley must provide evidence establishing a substantial breakdown in the attorney-client communication that prevented the presentation of an adequate defense. *United States v. Huston*, 280 F.3d 1164, 1168 (7th Cir. 2002). This argument again is undercut by Attorney Freese's affidavit stating that he spent 19.2 hours in face to face meetings with Mr. Dooley before trial, during which "there were never any arguments or incidents indicative of a breakdown in the attorney client relationship" (Doc. 5-1, ¶¶ 2, 3). According to Mr. Dooley, Attorney Freese responded to his suggestions by saying "that it was his job, not to worry, and that doctors don't treat themselves" and that he "should not assist in investigating his own case" (Doc. 1-1, p. 8). In a pre-sentencing letter to Attorney Freese, Mr. Dooley concluded by stating that he was confident Attorney Freese would "address all potential issues" and was "forever indebted to [him] for [his] work" (Doc. 5-1, p. 7).

This is not the type of breakdown envisioned by the Supreme Court, it is merely a recognition that "[t]he presentation of a legal defense can be a mystifying process even for well-

informed laypersons." *Gonzalez*, 553 U.S. at 249-250. Mr. Dooley offers only vague and conclusory allegations of a communication breakdown and fails to explain how this breakdown prevented the presentation of any viable defense. It is clear that Mr. Dooley was consulted and had input in the defense of his case; there was no reason for Attorney Freese to withdraw.

<u>Grounds for Relief Relating to Counts 1 and 2</u>

*Multiplicity of Counts 1 and 2*

Mr. Dooley argues that counsel was ineffective by failing to challenge the indictment on the grounds of multiplicity. Mr. Dooley relies upon *United States v. Stewart*, 420 F.3d 1007, 113 (9th Cir. 2005), and *United States v. Olsowy*, 836, F.2d 439 (9th Cir. 1987), in which the United States Court of Appeals for the Ninth Circuit held that a declarant who makes identical false statements in response to identical questions may be convicted only once. The Ninth Circuit Court of Appeals reasoned that without this rule, the Government could "pile on multiple convictions by repeatedly asking a declarant the same question." *Olsowy*, 836 F.2d at 442-443. This is not what happened to Mr. Dooley.

Mr. Dooley's statements on April 27, 2007, and May 18, 2007, were neither factually identical nor in response to identical questions. In each instance, investigators questioned Mr. Dooley in separate criminal investigations. On April 27, agents questioned him about his computers for the purpose of excluding them as the one used to create counterfeit currency found in the APD's currency locker. At the request of agents, Mr. Dooley signed a form on which he consented to a search of his home and claimed ownership of the computers. On May 18, agents questioned him about the theft of a Macbook after determining that the serial number on his computer matched a Macbook purchased by a bank robber that Mr. Dooley helped investigate. Mr. Dooley told investigators that he had purchased the laptop for $2000 at the St. Louis Galleria

and that he still had the receipt in his dresser. When confronted with the true receipt showing that the computer had been purchased by the bank robber, Mr. Dooley confessed to the false statement.

In each instance, Mr. Dooley made false statements to investigators seeking information about two different crimes. Although he made false statements about ownership of the computer in each instance, he made new false statements to investigators on May 18 when he supplied details of the purchase of the laptop and professed possession of the receipt. It is clear that Counts 1 and 2 refer to separate culpable conduct. There is a difference between repeating the same lie and being a serial liar.

*Count 1*

Mr. Dooley asserts that his attorney was ineffective by failing to argue that the FBI consent to search form was unclear because it asked two distinct questions but provided space for only one signature. Instead of advancing this argument, Attorney Freese highlighted the differences between the APD and FBI consent to search forms, arguing that Mr. Dooley did not read the form carefully because he believed he was granting consent, not professing ownership. Advancing either argument is an effort to show that Mr. Dooley did not intend to assert ownership and, therefore, did not intend to make false statements to investigators. Attorney Freese could not argue that Mr. Dooley accidentally asserted ownership by failing to read the FBI form carefully, and at the same time argue that he simply was unclear which of the form's two questions he was answering by signing his name. The Court will not question counsel's strategic choice between two viable, but mutually exclusive, arguments. *Cooper*, 378 F.3d 641.

*Count 2*

Mr. Dooley argues that his attorney was ineffective by failing to argue that no new lines of investigation were opened by investigators as a result of his conduct on May 18 because they knew he was making false statements, he recanted his false statements soon after they were made, and he simply was repeating the same false statements as contained in Count 1. As discussed above, Mr. Dooley's false statements on May 18 were not *a repeat* of those he made on April 27. Furthermore, Mr. Dooley is rearguing the same 'exculpatory no' doctrine and materiality arguments made by Attorney Freese in his motion to dismiss (Doc. 5-6, p. 4-7). In that motion, Attorney Freese argued that Mr. Dooley's false statements were not material because the agents "knew the truth," Mr. Dooley "recanted his statement within a short time," and "his statements had no material effect on the government's investigation" (*id.*). Mr. Dooley's claim fails the prejudice prong of the *Strickland* test because Attorney Freese made these arguments on his behalf in the motion to dismiss; therefore, the outcome would not have been different.

<u>Grounds for Relief Relating to Counts 5, 6, and 7</u>

Mr. Dooley claims that Attorney Freese was ineffective for failing to argue that Counts 5, 6, and 7 are duplicative and cites *Milanovich v. United States*, 365 U.S. 551, 553-554 (1961), for the proposition that he cannot be convicted and punished for stealing and also for receiving the same goods. This argument misapprehends the nature of these charges. Mr. Dooley was convicted on Count 7 for removing money from the APD evidence vault. He was convicted on Counts 5 and 6 for receiving, possessing, and concealing money stolen from two different banks. The rule that Mr. Dooley cites applies where the property acquires its status as stolen due to its theft by the defendant. The "stolen" money that Mr. Dooley removed from the APD evidence

vault acquired its status when it was first stolen during a bank robbery. *Milanovich* is not applicable to these charges.

        Sentencing Calculation on Count 4

Mr. Dooley claims that counsel was ineffective for failing to challenge the calculation of his offense level. He was convicted under Count 4 for removing and concealing a Macbook from a crime scene in violation of 18 U.S.C. § 1512(c)(1). He was sentenced under U.S.S.G. § 2J1.2(a) for obstruction of justice, which assigned a base offense level of 14. This was increased three levels to 17 pursuant to § 2J1.2(b)(2) because removing the Macbook from a crime scene resulted in substantial interference with the administration of justice by impairing its availability in the prosecution of bank robbers. Mr. Dooley's offense level was further raised pursuant to § 2J1.2(c), which directs the court to apply § 2X3.1 if the offense involved the obstruction of a criminal prosecution and the resulting offense level applied under § 2X3.1 would be greater than that applied under § 2J1.2. Guideline § 2X3.1 assigns the base offense level of the underlying offense that the defendant obstructed, i.e., bank robbery, and subtracts six points for a total of 14. His base offense level was further increased by enhancements relating to actions taken during the bank robbery.

Mr. Dooley's main contention is that certain enhancements[1] that applied to the bank robbers in the underlying offenses should not apply to him because only the "conduct he personally undertakes" should apply to his offense level (Doc. 1-1, p. 20). In support of this argument, he cites Application Note 10 to § 1B1.3, which states that in the case of accessory after the fact, "the conduct for which the defendant is accountable includes all conduct relevant

---

[1] Specifically, two levels were applied because the property of a financial institution was taken, five levels were applied because a firearm was brandished during the robbery of the Olin Community Credit Union of Alton, Illinois, and two levels were applied for a loss of more than $50,000, but less than $250,000, for a total offense level of 23.

to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant." U.S.S.G. § 1B1.3, Appl. Note 10. Mr. Dooley interprets § 1B1.3(a)(1)(B) to mean that he is responsible only for actions undertaken jointly with the underlying defendants. Mr. Dooley's reliance on § 1B1.3(a)(1)(B) is in direct conflict with Application Note 1 of § 2X3.1, which states that the "underlying offense" is defined by its "base level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant." U.S.S.G. § 2X3.1, Appl. Note 1. Mr. Dooley participated in investigating the underlying offenses and knew or reasonably should have known the facts underlying the enhancements. Attorney Freese cannot be said to have been ineffective for failing to make an argument directly contradicted by the application notes to the sentencing guidelines. Moreover Mr. Dooley received a sentence above the guidelines for the reasons articulated on the record; the guidelines were only a starting point and did not dictate his sentence.

Reversal of Count 3

Mr. Dooley claims that Attorney Freese also was ineffective for failing to argue that the wrongful conviction on Count 3 had an "extent of influence" that prejudiced him and caused the jury to convict him on Counts 4, 5, 6, and 7. It is impossible to imagine what evidence was admitted solely as to Count 3 that remotely affected the other counts. In any event, counsel cannot be said to have fallen "below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance" for failing to advance an argument expressly rejected by the Seventh Circuit Court of Appeals.

> When, as is often the case (it was here), the jury acquits a defendant of some counts of a multi-count indictment, the defendant is not entitled to a new trial on the counts of which he was convicted, on the theory that the conviction was tainted by evidence, which the jury heard, relating to the counts on which it acquitted. *See, e.g., United States v. Velasquez*, 772 F.2d 1348, 1354 (7th Cir. 1985). It is not like a case where evidence of

> other crimes is admitted in violation of Fed.R.Evid. 404 and the question is whether the error is harmless. *See*, *e.g.*, *United States v. Davis*, 838 F.2d 909, 914–17 (7th Cir. 1988); *United States v. Shackleford*, 738 F.2d 776, 783–84 (7th Cir. 1984). No rule of evidence is violated by the admission of evidence concerning a crime of which the defendant is acquitted, provided the crime was properly joined to the crime for which he was convicted and the crimes did not have to be severed for purposes of trial. It makes no difference, moreover, whether the jury acquits on some counts or the trial or reviewing court sets aside the conviction. *See United States v. DiCaro*, 772 F.2d 1314, 1320 n. 4 (7th Cir. 1985).

*United States v. Holzer*, 840 F.2d 1343, 1349 (7th Cir. 1988). Mr. Dooley's argument as to Count 3 is a non-starter.

**Supplemental Grounds for Post-Conviction Relief and Related Motions**

Many of Mr. Dooley's motions ask the Court to set aside the judgment due to a fraud perpetrated on the Court and refer to Federal Rule of Civil Procedure 60(b). (*See* Docs. 2, 12, 14, *citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991), *United States v. Bishop*, 744 F.2d 775, 776 (7th Cir. 1985), *and Hazel Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944)). The Court recognizes its inherent power to correct a fraud upon the Court. But, only clear and convincing evidence can justify granting such relief. *Ty Inc. v. Softbelly's, Inc.*, 517 F.3d 494, 498 (7th Cir. 2008); *see also Herring v. United States*, 424 F.3d 384, 387 (3rd Cir. 2005) (noting that a *Hazel Atlas* motion is available only for "the most egregious misconduct directed to the court itself," and it "must be supported by clear, unequivocal and convincing evidence."). A post conviction hearing is not necessary if the petitioner makes allegations that are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962).

<u>Government Exhibit 61: Security Recording</u>

Mr. Dooley alleges that a fraud was perpetrated upon the Court (Docs. 2, 3, 8, 14) because the "government intentionally altered a video recording, exhibit 61, by manipulating and

editing the recording to support the government's theory of the case" (Doc. 2, p. 1). A security recording made on April 10, 2007, shows Mr. Dooley transferring bank robbery evidence to FBI Special Agent Melanie Jimenez. Mr. Dooley concludes that the video, which consists of 288 frames, should consist of more than 4,000 frames because he spent more than 4,000 seconds in front of the camera. As support for his theory, he offers his opinion that frames 85, 86, 87, 159, 160, 179, and 180 represent deletions that are "visible to the eye" (*id.*).

In his affidavit, APD Detective Michael Bazzell details the capabilities of the APD Digital Video Recorder (DVR) and explains why the number of frames in the video does not correspond to the number of seconds spent in the evidence vault (Doc. 5-16). The camera in question is motion sensitive and capable of capturing no more than one frame each second (*id.* at ¶ 5). The DVR system captures only the movement taking place within an area covered by sensors and registers only movement strong enough to trigger the motion capture software (*id.* at ¶¶ 5, 6). The primary purpose of the camera is not to record every act taken in the evidence vault, but to record the identity of each person who accesses the room (*id.* at ¶ 8). The video system itself is highly secured and access is limited only to necessary individuals (*id.* at ¶ 10). These recordings cannot be altered or manipulated within the system, and they are transferred to optical discs that are permanent and cannot be changed (*id.*). Affidavits provided by Detective Bazzell and IRS Special Investigator Kim Singer establish the chain of custody of the disc containing Exhibit 61, which is challenged only by Mr. Dooley's conclusory statements that the chain was faulty (Doc. 5-16, 5-17).

Mr. Dooley has provided no evidence of fraud on the Court. He relies on his unsupported conclusions that the security recording does not contain the number of frames he believes it should and his opinion that the video contains deletions that are "visible to the eye" (Doc. 2, p.

1). Mr. Dooley does not purport to be trained in video forensics and has no expertise in the operation of the APD DVR system (Doc. 5-16). He has failed to provide any evidence that portions of the security recording in Exhibit 61 were intentionally deleted.

<u>Mr. Dooley's Accusations of Perjured Testimony</u>

Mr. Dooley claims that AUSA Durborow, Agent Jimenez, and the Government perpetrated a fraud upon the Court by conspiring to offer perjured testimony in an effort to hide deletions made to Exhibit 61 (Doc. 14). He states that during a meeting in an APD conference room with AUSA Durborow, Agent Jimenez, and APD Detective Jake Simmons, he documented the date, time, and persons present on an envelope containing photo lineups (the photo envelope) from a bank robbery investigation. He believes that the information contained on this envelope supports the conclusion that Exhibit 61 was altered and details an elaborate conspiracy of perjured testimony specifically orchestrated to prevent consideration of the envelope at trial. He says that it was not until he began his investigation into the authenticity of Exhibit 61 in April 2010 that he realized how "instrumental the photo line-up evidence, date/time would be in supporting the fact the video had been altered" (Doc. 14, p. 8).

Mr. Dooley argues that inconsistencies in the testimony of AUSA Durborow, Agent Jimenez, and Detective Simmons regarding the timeline of the meeting proves that they conspired to offer perjured testimony at trial. He thinks that Agent Jimenez's trial testimony, which was consistent with the security recording, amounted to perjury because it was inconsistent with her written report. Agent Jimenez testified that, although she believed her report to be true at the time it was written, she realized, after viewing the security recording, that instead of properly entering, removing, and reading off the barcode number of each item in *both evidence tubs*, Dooley had done so for *only one of the tubs*. These statements are not evidence

that Agent Jimenez committed a fraud upon the Court, as Mr. Dooley argues, but an embarrassing acknowledgement by Agent Jiminez that she had been tricked in the first instance by Mr. Dooley's sleight of hand. The recording of this sleight of hand was presented to the jury and no doubt influenced the guilty verdicts. The testimony regarding Exhibit 61 hardly constitutes fraud.

### Mr. Dooley's Motions to Compel Production of Evidence

Mr. Dooley filed two motions to compel the production of the video evidence discussed above. He thinks the recording should be one hour and seventeen minutes long instead of the far shorter version that was played in court. The Government has provided affidavits explaining the nature of the APD DVR system and exactly why there are only 288 frames in a recording that covers a time span of more than one hour. The Government's explanation is completely satisfactory. Mr. Dooley's motions to compel the production of this evidence (Docs. 3, 10) are denied.

Mr. Dooley also moves to compel the production of the photo envelope, claiming that it supports his theory that intentional deletions were made to Exhibit 61. He repeats the argument that the recording was altered. This motion to compel (Doc. 11) is denied for the reasons stated above.

### Trial Testimony Relating to Gambling

Mr. Dooley claims that the Government intentionally misrepresented the evidence of his casino gambling records and paired it with the money missing from a police evidence bag (Doc. 12). The Government proved that Mr. Dooley lost $9,458.25 during an eleven-day period following his seizure of $9,460.00 executing a search warrant. The evidence bag that should have contained the $9,460.00 contained only $500.00 when it was discovered by investigators.

He argues that the Government unfairly prejudiced the jury by pointing out the amount of money missing from the police evidence bag to be within $1.75 of what he lost gambling (Doc. 12). This evidence was surely prejudicial but hardly unfair, and it certainly was not a fraud on the Court.

He further argues that the Government intentionally miscalculated his gambling losses. The casino's winnings from each player are referred to as "actual-win," which is calculated as total "money in," less total "money out," less jackpots. Mr. Dooley thinks this "actual win" number is not a reflection of his out-of-pocket losses but rather a combination of out-of-pocket money and money won, replayed over and over. His construction of this calculation is delusional and in direct conflict with the testimony of the casino accounting manager; the casino understood and precisely accounted for Mr. Dooley's gambling losses. The gap between what Mr. Dooley thinks he lost and what the casino knows he lost explains why Mr. Dooley was such a valued repeat customer. The gambling evidence does not constitute fraud on the Court. This motion for relief (Doc. 12) is denied.

<u>Mr. Dooley's Request to Unseal Portions of the Trial Transcript</u>

Mr. Dooley asks the Court to unseal a portion of the trial transcript of AUSA Durborow. The only sealed portion of the trial transcript is testimony related to voir dire and is not available to Mr. Dooley because it identifies the jurors. The testimony of AUSA Durborow was never sealed. Mr. Dooley's motions requesting that the Court unseal portions of the trial transcript (Docs. 9, 13) are denied.

## CONCLUSION

For the foregoing reasons, the motion for relief pursuant to 28 U.S.C. § 2255 and all related motions are **DENIED**, and this action is **DISMISSED with prejudice**. The Clerk of the Court is directed to enter judgment accordingly.

**IT IS SO ORDERED**

DATED: 09/21/11

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge